**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------

**ALISHAEV BROTHERS, INC.,**

                  **Plaintiff,**          17-cv-7505 (JGK)

      - against -                  **MEMORANDUM OPINION &**
                                                      **ORDER**
**LA GIRL JEWELRY, INC. et al.,**

                  **Defendant.**

--------

**JOHN G. KOELTL, District Judge:**

    On June 25, 2019, the Court held a one-day non-jury trial in this case. On March 27, 2020, the Court issued an opinion setting out findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

    In the March 27, 2020 opinion, the Court found the four defendants, the two individual defendants, Pedram Shamekh and Robert Zendedel, and the two corporate defendants, LA Girl Jewelry, Inc. ("LA Girl") and Ner Precious Metals, Inc. ("Ner"), liable to the plaintiff, Alishaev Brothers, Inc., for breach of contract, fraud, conversion, and an order of replevin.[1] The Court also found that, pursuant to New York Debtor and Creditor Law ("DCL") § 276, the plaintiff was entitled to set aside as fraudulent a conveyance made by Zendedel to Shamekh in September 2017 in which Zendedel had transferred to Shamekh the deed of

---

[1] The Court found that the defendants were not liable to the plaintiff for punitive damages and declined to impose a constructive trust in this case.

trust mortgaging Zendedel's home. The Court further found that the individual defendants, Shamekh and Zendedel, operated the corporate defendants, Ner and LA Girl respectively, as alter egos of themselves with respect to the transactions at issue in this case and that Shamekh and Zendedel operated as partners by estoppel. For those reasons, the Court found that the four defendants in the case – the two individual defendants and the two corporate defendants – were jointly and severally liable to the plaintiff for all damages.[2]

The Court did not enter judgment at that time, but instead the Court directed the plaintiff to submit a proposed judgment and permitted the defendants to submit any objections and counter-judgment following the plaintiff's submission. The plaintiff's proposed judgment was largely consistent with the Court's findings of fact and conclusions of law except that the plaintiff stated that an order of replevin was no longer necessary because the goods that formed the basis of the litigation – gold jewelry merchandise – were either no longer in the defendants' possession or had been melted down.

In their responsive submissions, the defendants objected to the plaintiff's proposed judgment on two grounds. First, the

---

[2] A certificate of default was entered before trial against LA Girl and defendant Zendedel and his counsel chose not to appear at the trial.

defendants objected that it was improper to set aside under the DCL the transfer of the deed of trust from Zendedel to Shamekh because the plaintiff did not seek such relief in the Complaint; the joint pre-trial order did not mention the deed of trust; the plaintiff's pre-trial proposed findings of fact and conclusions of law did not mention the deed of trust; and the plaintiff never argued at trial that Zendedel's transfer of the deed of trust to Shamekh should be set aside under the DCL. Second, the defendants objected to setting aside the conveyance as fraudulent on the ground that because the Court found alter ego liability such that Ner was the alter ego of Shamekh and LA Girl was the alter ego of Zendedel, there could be no fraudulent transfer because "one cannot fraudulently transfer property to himself/itself." Dkt. No. 110, at 4.

I.

The defendants' first objection to the proposed judgment raises the issue whether the plaintiff's claim under the DCL to set aside the September 2017 transfer of the deed of trust from Zendedel to Shamekh was properly a claim on which relief could be afforded in this case.

A.

The sixth claim alleged by the plaintiff in the Complaint was for "Violations of Debtor and Creditor Law." Compl. ¶¶ 75-

83. Specifically, the plaintiff alleged that "Shamekh and Zendedel converted the gold jewelry products and merchandise of the corporate defendants and used the proceeds thereof for their personal benefit" and that "all distributions and receipts received by Shamekh and Zendedel from their corporations' sales proceeds and Shamekh's and Zendedel's realization of the corporate defendants' assets, of any kind, from and after the time that the corporate defendants became insolvent, constitute fraudulent conveyances under New York Debtor and Creditor Law §§ 270 et seq." Id. at ¶¶ 79-80. The defendants answered the Complaint and denied the allegations that the defendants had violated the DCL. Dkt. No. 24 ¶¶ 75-83.

On September 7, 2018, the plaintiff submitted a proposed pre-trial order that included in the list of claims to be tried a claim for violations of the New York Debtor and Creditor Law §§ 270 et seq. in connection "with the individual defendants' receipt of distributions from their respective corporate defendants from and after the time that the corporate defendants became insolvent under the Debtor & Creditor Law." Dkt. No. 46, at 3. In the proposed pre-trial order, the plaintiff submitted its list of exhibits and noted any objections to the exhibits made by the defendants. Plaintiff's Exhibit 56 was the "Short Form Deed Of Trust and Assignments of Rents APN: 4305-021-003-

Bates PS000168-PS 000177" and Plaintiff's Exhibit 57 was the "Short Form Deed Of Trust and Assignments of Rents Bates PS000178-PS000183." Dkt. No. 46-3, at 4.[3] In the joint pre-trial order submitted on January 9, 2019, the plaintiff included violations of the DCL in the list the plaintiff's claims. Dkt. No. 62, at 3. In its pre-trial proposed findings of fact and conclusions of law submitted on January 21, 2019, the plaintiff included proposed general conclusions of law to the effect that the defendants had violated the DCL. Dkt. No. 65, at 15-17.

At trial on June 25, 2019, counsel for the plaintiff examined Shamekh about the short form deed of trust and assignment of rents from Zendedel to Shamekh:

> Q. You requested Mr. Zendedel to sign and issue to you the short form deed of trust and assignment of rent with respect to his house, right?
> A. Yes.
> Q. And you did that, it's dated September 26, 2017, correct?
> A. Correct.
> Q. That was 21 days after the September 5, 2017 transaction that we had in this case, correct?
> A. Okay.
> Q. Why did you ask at that time for this deed of trust to be entered into as opposed to any time before?
> A. Because his – the reason that I asked him to give me a lien on his house is because I wanted something of security for myself. And why did I do it specifically on that date?
> Q. Yes. Wasn't it because you knew that you had already issued bogus checks and that L.A. Girl had

---

[3] The defendants objected to the admissibility of Plaintiff's Exhibit 57, but made no comment with respect to Plaintiff's Exhibit 56.

>issued bogus checks and took merchandise worth almost a half a million dollars from Alishaev Brothers and you knew that you would be summoned to a lawsuit for that? Isn't that why you wanted to protect yourself by having this deed of trust?
>A. No, sir. That was not the reason.
>Q. So why, just –
>A. I didn't write bogus checks.
>Q. I was in the middle of a question, Mr. Shamekh.
>A. Okay.
>Q. Why, just on September 26, 2017, coincidentally, that's when, after all the years that you have had a relationship, after having Mr. Zendedel owe you a million dollars even in 2016, did you wait until then to do this?
>A. Personal choice.

Tr. at 117-19. The plaintiff also offered Plaintiff's Exhibit 56, the short form deed of trust and assignment of rents, to be admitted into evidence at that time. Id. at 116-17. There was no objection to the introduction of Plaintiff's Exhibit 56 or to the plaintiff's questions concerning the transfer of the deed of trust from Zendedel to Shamekh in September 2017. Id. at 117-19.[4]

In its post-trial proposed findings of facts and conclusions of law submitted on July 31, 2019, the plaintiff expressly proposed that the Court make specific findings that when Zendedel signed and issued to Shamekh the deed of trust on September 26, 2017, the defendants violated multiple sections of the DCL, including Section 276, by "intentionally placing

---

[4] The Court noted that Plaintiff's Exhibit 56 had not been stipulated to be admissible at trial. However, when asked, defense counsel for Shamekh and Ner stated that there was no objection to Plaintiff's Exhibit 56, which the Court then admitted into evidence. Tr. at 116-17.

6

roadblocks to collection of the debt and acting to render Zendedel judgment proof." Dkt. No. 104, at 26. At no time following the submission of post-trial proposed findings of fact and conclusions of law, from July 31, 2019 until the defendants responded to the plaintiff's proposed judgment on April 16, 2020, did the defendants raise an objection to the plaintiff's proposal that the Court set aside as fraudulent under the DCL the September 26, 2017 transfer by Zendedel to Shamekh of the deed of trust to Zendedel's home.

**B.**

The plaintiff argues that the claim to set aside the deed of trust under the DCL is fairly encompassed in the Complaint, but the plaintiff argues that, if it is not, then the Complaint should be amended to conform to the evidence at trial to encompass the claim. The specific claim that the transfer of the deed of trust from Zendedel to Shamekh on September 26, 2017 should be set aside as a fraudulent conveyance under the DCL cannot be fairly read into the Complaint. Rather, the Complaint alleges that the defendants violated the DCL principally by distributing corporate sales proceeds to the individual defendants to make the corporate defendants judgment proof. See Compl. ¶¶ 75-83. However, the specific claim concerning the September 26, 2017 transfer should be allowed as a post-trial

amendment to the Complaint to conform it to the evidence at trial pursuant to Federal Rule of Civil Procedure 15(b)(2).

Rule 15(b)(2) states that "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move — at any time, even after judgment — to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue."[5]

When deciding whether to allow an amendment pursuant to Rule 15(b)(2) to conform to the evidence at trial, the relevant questions are whether the issues were litigated with the parties' implied or express consent and whether the defendant would be prejudiced by the amendment by not having had an opportunity to defend against the amendment. See Myers v. Moore, 326 F.R.D. 50, 61 (S.D.N.Y. 2018). "Usually consent may be implied from the failure to object at trial to the introduction of evidence relevant to the unpled issue. However, consent must be based on whether the non-moving party recognized that the matter at issue had entered the case on trial." L.I Head Start

---

[5] Rule 15(b)(1) governs amendments made at trial when a party objects that evidence is not within the issues raised in the pleadings. Rule 15(b)(1) is inapplicable in this case because no objections were made at trial with respect to the current issues before the Court.

Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., 558 F. Supp. 2d 378, 387 (E.D.N.Y. 2008) (internal quotation marks and internal citations omitted).

In this case, the matter at issue was tried with the defendants' implied consent because the defendants recognized that the matter at issue had entered the case on trial and they did not object.

The defendants were on notice upon the filing of the Complaint that the plaintiff generally sought to set aside as fraudulent under the DCL certain distributions of assets by the corporate defendants to the individual defendants that were intended to make the corporate defendants judgment proof. The plaintiff's intent to proceed under the DCL was underscored in the joint pre-trial order in which the plaintiff listed the DCL as a cause of action. Then, in the joint pre-trial order, the plaintiff specifically included the deed of trust in question that was transferred from Zendedel to Shamekh on September 26, 2017 in its exhibit list. The specific questions that counsel for the plaintiff asked Shamekh at trial about the September 26, 2017 transfer were directly relevant to the specific issue of the defendants' attempts to re-distribute assets in light of the impending lawsuit with the plaintiff. See Tr. at 117-18 ("Q. Yes. Wasn't it because you knew that you had already issued

9

bogus checks that L.A. Girl had issued bogus checks and took merchandise worth almost a half a million dollars from Alishaev Brothers and you knew that you would be summoned to a lawsuit for that?"); id. at 118 ("Q. Why, just on September 26, 2017, coincidentally, that's when, after all the years that you have had a relationship, after having Mr. Zendedel owe you a million dollars even in 2016, did you wait until then to do this?"). Because the defendants should have "recognized that the matter at issue had entered the case on trial" during the questioning of Shamekh, the defendants' implied consent to trial of the issue can be inferred by their "failure to object at trial to the introduction of evidence relevant to the unpled issue." L.I. Head Start, 558 F. Supp. 2d at 387.

The defendants suggest that it was not reasonable for them to recognize at trial that the plaintiff brought up the issue of the deed of trust to prove a violation of the DCL because the "Plaintiff brought it up to show that Zendedel and Shamekh had a business relationship before doing business with Plaintiff." Dkt. No. 113, at 5-6. That argument makes no sense. It is clear that the plaintiff's counsel questioned Shamekh specifically about the timing of the September 26, 2017 transfer, which took place after the fraudulent transactions at issue in this case and at a time when the defendants should have known they were

about to be embroiled in a lawsuit with the plaintiff. At trial, plaintiff's counsel asked questions about the timing of the transfer of the deed after the fraudulent sales at issue in this case to show that the transfer of the deed was in violation of the DCL, not to show that Zendedel and Shamekh had a prior relationship. Therefore, it was clear at trial that the questions were primarily "relevant to the unpled issue" of proving a violation of the DCL by the transfer of the Deed of Trust to Shamekh. See L.I. Head Start, 558 F. Supp. 2d at 387 (quoting United States v. Certain Real Property, 945 F.2d 1252, 1257 (2d Cir. 1991)). Because the matter at issue was "relevant to the unpled issue" of the September 26, 2017 transfer as a violation of the DCL and not to the issue of the pre-existing business relationship between Zendedel and Shamekh before they met the plaintiff, the defendants should have recognized that the issue of the transfer of the deed of trust as a violation of the DCL had entered the trial when the plaintiff's counsel questioned Shamekh about the September 26, 2017 transfer, and the defendants' consent can therefore be implied by their failure to object at the time. See id.

   Additionally, the defendants are not prejudiced by the amendment. The defendants do not suggest that the evidence at trial did not support the Court's finding of a violation of the

11

DCL by the transfer of the deed of trust from Zendedel to Shamekh. Moreover, the defendants do not now point to any evidence that they would have offered at trial to counter the finding that the transfer of the deed of trust was in violation of the DCL. The defendants have known that the plaintiff sought to set aside the transfer of the deed of trust from Zendedel to Shamekh as fraudulent at least since July 31, 2019, when the plaintiff expressly included the issue in its proposed findings of fact and conclusions of law. The defendants could have, at that time, objected to the inclusion of the plaintiff's claim to set aside the transfer of the deed of trust from Zendedel to Shamekh in September 2017 as a fraudulent conveyance under the DCL or asked the court "on motion for a new trial," to "take additional testimony" concerning the September 26, 2017 transfer. See Fed. R. Civ. P. 59(a)(2). The defendants have never suggested what evidence they might have presented at trial that would have undermined this Court's findings of fact and conclusions of law that the transfer of the deed of trust violated the DCL.

In addition, there is no prejudice to the defendants because "the facts surrounding these new claims are substantially similar to the original claim" made in the Complaint and reiterated in pre-trial filings, namely that the

12

corporate defendants had sought to make themselves judgment proof by transferring assets to the individual defendants. In re Marine Risks, Inc., 441 B.R. 181, 198 (Bankr. E.D.N.Y. 2010), aff'd sub nom., Ackerman v. Pilipiak, 457 B.R. 191 (E.D.N.Y. 2011). Particularly in light of the plaintiff's further allegations in the Complaint that the individual defendants operated their respective corporations as alter egos of themselves and commingled corporate and individual assets and liabilities, Compl. ¶ 90, the amendment to conform to the evidence at trial did not add significantly new issues to the trial. See Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 529 (S.D.N.Y. 2011) ("Finally, amending the pleadings to conform to the evidence at trial in this manner adds no new issues to the case because the same set of facts involved in deciding" the amended claim also arise under a pleaded claim).

Because the matter at issue was tried with the implied consent of the defendants and the defendants will not suffer prejudice as a result of the amendment to conform the pleadings to the evidence at trial, the defendants' first objection to the plaintiff's proposed judgment is overruled.

**II.**

The defendants also object to the proposed judgment on the ground that because the Court found that Ner was Shamekh's alter ego and LA Girl was Zendedel's alter ego, "there could not be any fraudulent transfer because one cannot fraudulently transfer property to himself/itself." Dkt. No. 110, at 4.

The defendant's objection is misplaced. The conveyance that the Court set aside as a fraudulent conveyance under Section 276 of the DCL was the deed of trust to Zendedel's house that was transferred to Shamekh in September 2017. The conveyance was made from one defendant in this case (Zendedel) to another defendant in this case (Shamekh). The Court did not find that Zendedel and Shamekh were alter egos of each other, but rather that they were partners by estoppel. Courts have set aside as fraudulent conveyances made between partners, see Bradley v. Kraemer, 594 N.Y.S.2d 308, 309 (App. Div. 1993) (setting aside as fraudulent a conveyance that "was between related companies, and partners in business"), as well as conveyances made between different defendants in the same case, see Sardis v. Frankel, 978 N.Y.S.2d 135, 137 (App. Div. 2014) (setting aside as fraudulent a conveyance of a condominium apartment from one defendant to another defendant).

The conveyance from Zendedel to Shamekh was properly set aside as fraudulent under Section 276 of the DCL. There is nothing about the Court's findings with respect to alter ego liability that is inconsistent with that finding. The defendants' objection on that ground is overruled.

## CONCLUSION

The defendants' objections to the proposed judgment are **overruled.** Therefore, the Clerk is directed to enter judgment as provided in the accompanying Judgment. The Clerk is also directed to close any pending motions and to close this case.

**SO ORDERED.**

**Dated:     New York, New York
            May 4, 2020**                          /s/ John G. Koeltl
                                                          **John G. Koeltl
                                   United States District Judge**